IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

GEORGE ASHRAF MORGAN FARAGALLA,

      Petitioner,

           v.                            Civil Action No. 3:26cv63

JEFFREY CRAWFORD, *in his official*
*Capacity as Warden, Farmville Detention Center,*

      Respondent.

## MEMORANDUM OPINION

This matter comes before the Court on Petitioner George Ashraf Morgan Faragalla's ("Petitioner") Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 (the "Petition"). (ECF No. 1.)  In the Petition, Mr. Faragalla challenges his detention by Immigration and Customs Enforcement ("ICE"), arguing that his prolonged detention in ICE custody violates his constitutional right to due process under the Fifth Amendment to the United States Constitution and the Immigration and Nationality Act ("INA").  (ECF No. 1 ¶¶ 13–16.)

On January 23, 2026, Mr. Faragalla filed the Petition.  (ECF No. 1.)  Respondent responded.  (ECF No. 4.)  The Court ordered additional briefing from Respondent, (ECF No. 5), which he provided, (ECF No. 6).

This matter is ripe for disposition.  For the reasons articulated below, the Court will grant the Petition and order Mr. Faragalla released.  (ECF No. 1.)

## I. Factual and Procedural Background

### A.    Factual Background

Mr. Faragalla is citizen and native of Egypt.  (ECF No. 1 ¶ 6.)  He is twenty-four years old.  (ECF No. 4-1 ¶ 5.)  He has no other citizenship, though he has "strong ties to the United

States," including "family members and supporters in the United States [who] are prepared to provide him with stable housing, financial support, transportation, and other necessities upon release." (ECF No. 1 ¶¶ 6, 10–11.)  "Mr. Faragalla has no criminal history in the United States or abroad." (ECF No. 1 ¶ 11.)

On October 24, 2024, Mr. Faragalla "entered the United States without inspection near the southern border." (ECF No. 1 ¶ 8; ECF No. 4-1 ¶ 6.)  Petitioner was detained by Customs and Border Patrol ("CBP"), which served him with a "Form I-860, Notice and Order of Expedited Removal pursuant to 8 U.S.C. § 1225(b)(1)(A)." (ECF No. 4-1 ¶ 6.)

Mr. Faragalla "expressed a fear of returning" to Egypt and "was referred to [United States Citizenship and Immigration Services ("USCIS")] for a Credible Fear Interview." (ECF No. 4-1 ¶ 7.)  An asylum officer determined that Petitioner demonstrated a credible fear of returning to Egypt "on account of his Coptic Chrisitan faith." (ECF No. 1 ¶ 8; ECF No. 4-1 ¶ 8.)

Following his credible fear interview, Mr. Faragalla "was issued a Notice to Appear and placed into removal proceedings." (ECF No. 4-1 ¶ 8.)  Mr. Faragalla applied for asylum and for withholding of removal under the INA and the Convention Against Torture. (ECF No. 1 ¶ 8.)

On May 8, 2025, an Immigration Judge ordered Petitioner removed from the United States to Egypt. (ECF No. 4-1 ¶ 9; ECF No. 1 ¶ 9.)  However, the Immigration Judge granted Mr. Faragalla's request for withholding of removal, determining that "his life or freedom would be threatened in Egypt because of his Coptic Christian religion." (ECF No. 1 ¶ 9; ECF No. 4-1 ¶ 9.)  Both parties waived appeal, and the removal order became administratively final on May 8, 2025. (ECF No. 4-1 ¶ 9.)

ICE continued to detain Mr. Faragalla following entry of the Immigration Judge's order of removal. (*See* ECF No. 4-1 ¶ 10.)  In August and November 2025, the Department of

2

Homeland Security ("DHS") completed 90- and 180-day custody reviews and "determined [that] Petitioner should remain detained" because he "fail[ed] to establish he did not pose a significant risk of flight pending his removal."[1]  (ECF No. 4-1 ¶¶ 10–11.)  He is currently detained at the Farmville Detention Center in Farmville, Virgina.  (ECF No. 1 ¶ 1.)

Respondent submits that DHS is "actively working on Petitioner's removal to a third country."  (ECF No. 4-1 ¶ 12.)  "[P]rior to July 2025," DHS sent I-241 requests to Libya and Chad seeking Petitioner's removal.  (ECF No. 4, at 2 n.1.)  "Libya denied the request.  Chad has not responded."  (ECF No. 4, at 2 n.1.)

Respondent also represents that DHS "is no longer relying on these requests because . . . DHS Headquarters is not following up with [outstanding] I-241 requests."  (ECF No. 4, at 2 n.1.) Instead, DHS is utilizing "Department of State negotiations to effectuate" Mr. Faragalla's third country removal.  (ECF No. 4, at 2 n.1 (citing *Banoub v. Crawford*, No. 3:25-cv-917 (MHL), 2025 WL 3723458, at *3–5 (E.D. Va. Dec. 23, 2025).)

"In July 2025, ICE began to coordinate with the Department of State to arrange Third Country Removal Agreements to effectuate the removal of aliens to third countries."  *Banoub*, 2025 WL 3723458, at *4. "[C]oordinating a Third Country Removal Agreement includes several steps.  Once the Third Country Removal Agreement is finalized, ICE follows procedures set out in Guidance promulgated by DHS in March 2025 (the 'March Guidance') to effectuate the alien's removal to the third country."  *Id.*  All told, DHS' current third country removal process includes roughly eight steps:

> *First*, the Department of State negotiates a removal agreement with a third country. This negotiation starts by setting "nomination criteria" with the third country to

---

[1] DHS regulations permit detainees to request reconsideration of their detention every three months "based on a proper showing of a material change in circumstances."  *See* 8 C.F.R. § 241.4(k)(2)(iii); *Castaneda v. Perry,* 95 F.4th 750, 761–62 (4th Cir. 2024).

determine the kinds of individuals the third country is willing to accept. Once the nomination criteria are established, the Department of State notifies ICE.

*Second*, ICE creates a list of aliens who meet the nomination criteria for removal to the third country.

*Third*, ICE's list of nominated aliens is sent to the third country for review. The third country may accept all, some, or none of the nominated aliens on the list. . . . [T]he timeline for the review process "varies," and [] there is no set amount of time within which a third country must complete its review of potential aliens to accept.

*Fourth*, if a third country accepts an alien, ICE is notified and proceeds with removal of that alien as set out in the March Guidance.

*Fifth*, in accordance with the March Guidance, DHS determines whether the third country "has provided diplomatic assurances that aliens removed from the United States will not be persecuted or tortured." "If the United States has received such assurances, and if the Department of State believes those assurances to be credible, the alien may be removed without the need for further procedures." But if "the United States has not received those assurances, or the Department of State does not believe them to be credible," DHS proceeds to step six.

*Sixth*, DHS will "inform the alien of removal to that country." When doing so, "[i]mmigration officers will not affirmatively ask whether the alien is afraid of being removed to that country." If the alien "affirmatively states a fear of removal," DHS will refer the alien to [USCIS] for screening for eligibility for protection from removal under the INA and CAT.

*Seventh*, where an alien affirmatively states a fear of persecution or torture, USCIS "will generally screen the alien within 24 hours of referral from the immigration officer." An asylum officer at USCIS "will determine whether the alien would more likely than not be persecuted on a statutorily protected ground or tortured in the country of removal." . . . [There is no] specific timeframe in which this determination has to be made[.]

*Eighth*, "[i]f USCIS determines that the alien has met this standard," USCIS refers the matter to Immigration Court for proceedings to determine the alien's eligibility for withholding of removal under the INA and CAT for the country of removal. "Alternatively, ICE may choose to designate another country for removal."

*Banoub*, 2025 WL 3723458, at *4–5 (internal citations omitted).

DHS has not identified a third country for Mr. Faragalla's removal. (ECF No. 1 ¶ 9.)

However, Respondent submits that Petitioner has been identified as a "*potential* candidate for a

third country removal agreement." (ECF No. 4-1 ¶ 12 (emphasis added).) He therefore appears to be at the second "step" of DHS' third country removal process.

Respondent has not, and cannot, provide any details about the country for which Mr. Faragalla has been identified as a potential candidate for third country removal, including the name of the country, whether the country has accepted third-country removals in the past and, if so, how long that process has taken. (*See* ECF Nos. 5, 6.)

### B.    Procedural Background

On January 23, 2026, Mr. Faragalla filed the instant Petition. (ECF No. 1.) On January 27, 2026, the Court ordered Respondent to respond to the Petition within seven days. (ECF No. 2, at 4.) The Court provided Petitioner the opportunity to reply to Respondent's response within seven days of the filing of the response. (ECF No. 2, at 4.)

On February 3, 2026, Respondent responded. (ECF No. 4.) In the Response, Respondent submits that the factual and legal issues presented in the Petition do not differ in any material fashion from those presented in *Banoub v. Crawford*, No. 3:25-cv-917 (MHL) (E.D. Va. 2025). Respondent "requests that the Court incorporate the filings in *Banoub* into the record of this habeas action." (ECF No. 4, at 2.) Petitioner did not reply. Without objection from Petitioner, the Court incorporates Respondent's merits brief in *Banoub* into the record. *See Banoub v. Crawford*, 3:25-cv-917, ECF Nos. 10, 18 (E.D. Va. 2025).

On February 13, 2026, this Court ordered Respondent to submit additional briefing with further information about DHS' efforts to remove Mr. Faragalla from the United States. (*See generally* ECF No. 5.) On February 20, 2026, Respondent filed the supplemental brief. (ECF No. 6.)

5

## II.  Standard of Review

28 U.S.C. § 2241(a) provides that "[w]rits of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." *Id.*  "A federal court may grant habeas relief only on the ground that the petitioner is in custody in violation of the Constitution or laws or treaties of the United States." *Torrence v. Lewis*, 60 F.4th 209, 213 (4th Cir. 2023) (internal citations and brackets omitted); *see also Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).  After receiving the petition and any response thereto, "[t]he court shall summarily hear and determine the facts, and dispose of the matter as law and justice require." 28 U.S.C. § 2243.

## III.  Analysis

The central issue before the Court is whether Mr. Faragalla's removal from the United States is likely to occur in the reasonably foreseeable future. *See Zadvydas v. Davis*, 533 U.S. 678 (2001).  Mr. Faragalla contends that ICE has failed to take sufficiently concrete steps to establish his reasonably foreseeable removal.  (ECF No. 1 ¶ 12.)  In opposition, Respondent relies on the same arguments and rationale recently rejected by this Court in *Banoub v. Crawford*, No. 3:25-cv-917 (MHL), 2025 WL 3723458 (E.D. Va. Dec. 23, 2025).  Here, as in *Banoub*, Respondent argues that DHS' ongoing efforts to remove Mr. Faragalla to an unnamed third establish that Mr. Faragalla's removal is reasonably foreseeable.  (*See* ECF No. 4, at 1–2 (relying on *Banoub*, No. 3:25-cv-917, ECF Nos. 10, 18).)  Mr. Faragalla's Petition raises no new issues, and Respondent raises no new arguments, that would compel a different outcome from that in *Banoub*.

For the reasons articulated below, the Court concludes that Mr. Faragalla has shown that his removal from the United States is not reasonably foreseeable and that Respondent has not

6

rebutted this showing.  The Court will grant the Petition and order Mr. Faragalla released.[2]

> **A.**   **Mr. Faragalla's Detention is Unlawful Under 8 U.S.C. § 1231 and *Zadvydas* Because His Removal is Not Reasonably Foreseeable**
>
> > **1.**   **Legal Standard:  Post-Removal Order Detention Under 8 U.S.C. § 1231 and *Zadvydas***

8 U.S.C. § 1231 governs the detention and removal of aliens subject to final orders of

removal.[3]  Under § 1231, upon the issuance of a final order of removal to an alien, the alien shall

---

[2] Although the parties do not argue otherwise, the Court confirms that it has jurisdiction over Mr. Faragalla's Petition.  *See Zadvydas*, 533 U.S. at 687–88 (noting that when a petitioner challenges "the extent of the Attorney General's authority under the post-removal-period detention statute," § 2241 habeas proceedings are available for "statutory and constitutional challenges" to such detention); *see also Zavvar v. Scott*, No. 25-2104-TDC, 2025 WL 2592543, at *3 (D. Md. Sept. 8, 2025) (same).

The Court adds that its jurisdiction over the Amended Petition is not impacted by *D.V.D. v. U.S. Dep't of Homeland Sec.*, 778 F. Supp. 3d 355 (D. Mass. 2025).  In *D.V.D.*, a district court granted a preliminary injunction relating to a certified class of aliens presently subject to a final order of removal and whom DHS "has deported or will deport on or after February 18, 2025, to a country (a) not previously designated as the country or alternative country of removal, and (b) not identified in writing in the prior proceedings as a country to which the individual would be removed." *Id.* at 378, 393.  The preliminary injunction required certain procedural steps to occur before the removal of a class member to a third country. *See id.* at 392–93.

*D.V.D.* is inapposite.  The relief Mr. Faragalla seeks—release from detention pending removal—is not relief sought on behalf of the class in *D.V.D.*  The Court will not dismiss or stay the Amended Petition as a result of *D.V.D. See Zavvar*, 2025 WL 2592543, at *3.  To assure a full record, the Court adds that Respondent correctly notes that, on July 3, 2025, the Supreme Court stayed the injunction in full.  (*Banoub*, ECF No. 10, at 7–8 n.2 (citing *Dep't of Homeland Sec. v. D.V.D.*, 145 S. Ct. 2627, 2629–30 (2025).)

[3] 8 U.S.C. § 1231 provides, in pertinent part:

(a) Detention, release, and removal of aliens ordered removed

> (1) Removal period

> > (A) In general

> > Except as otherwise provided in this section, when an alien is ordered removed, the Attorney General shall remove the alien from the United

be removed "within a period of 90 days." 8 U.S.C. § 1231(a)(1)(A). The alien "*shall*" be detained during the removal period. *Id.* § 1231(a)(2)(A).

An alien not removed during the removal period may be released or detained. Under 8 U.S.C. § 1231(a)(3), aliens who do not leave the United States or are not removed during the removal period "*shall* be subject to supervision" pending their removal. 8 U.S.C. § 1231(a)(3) (emphasis added). But § 1231(a)(6) provides that certain noncitizens, including those "determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period." 8 U.S.C. § 1231(a)(6). That is, § 1231(a)(6) permits the continued detention of an alien after the removal period.

Section 1231 "does not specify a time limit on how long DHS may detain an alien in the post-removal period." *Castaneda v. Perry*, 95 F.4th 750, 755–56 (4th Cir. 2024). But the United States Supreme Court addressed this issue in *Zadvydas v. Davis*, 533 U.S. 678 (2001). In *Zadvydas*, the Supreme Court considered whether § 1231(a)(6) authorizes the indefinite detention of an alien subject to a removal order, or whether the statute permits detention only for a period reasonably necessary to secure the alien's removal. *Zadvydas*, 533 U.S. at 692. Recognizing the "serious constitutional problem arising out of a statute that . . . permits an

---

<div style="margin-left:2em">

States within a period of 90 days (in this section referred to as the "removal period").

<div align="center">* * *</div>

(2) Detention

(A) In general

During the removal period, the Attorney General shall detain the alien[.]

</div>

8 U.S.C. § 1231(a)(1)–(2).

indefinite, perhaps permanent, deprivation of human liberty," *id.*, the *Zadvydas* Court "construe[d] [§ 1231] to contain an implicit 'reasonable time' limitation.'" *Id.* at 682. This period, the Supreme Court determined, is presumptively six months. *Id.* at 701.

The six-month presumption "does not mean that every alien not removed must be released after six months." *Id.* But if an alien is detained beyond six months, the reasonable presumption no longer exists. At that point, "if 'the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing' or release the alien." *Castaneda*, 95 F.4th at 756 (quoting *Zadvydas*, 533 U.S. at 701); *see also Menghua Wan v. Crawford*, No. 1:13-cv-1473 (JCC), 2014 WL 970180, at *3 (E.D. Va. Mar. 12, 2014) (explaining the burden-shifting test established in *Zadvydas* to assess the constitutionality of detention following the presumptively reasonable six-month period).

### 2.    Mr. Faragalla Has Been Detained for More than Six Months Meaning That His Detention Exceeds the Presumptively Reasonable Six-Month Period

Mr. Faragalla's removal period began on May 8, 2025, when the Immigration Judge ordered Mr. Faragalla removed from the United States and both parties waived the right to appeal. (*See* ECF No. 4-1 ¶ 9; *see* ECF No. 1 ¶¶ 9, 12.) Because over nine months have elapsed since May 8, 2025, Mr. Faragalla's detention exceeds the presumptively reasonable six-month period under *Zadvydas*. (*See* ECF No. 4, at 1 ("Petitioner has remained in custody for more than six months after his order of removal became final.").)

The Court next considers whether Mr. Faragalla has established that there exists no significant likelihood of his removal in the reasonably foreseeable future. *Castaneda*, 95 F.4th at 756. He has met this burden.

9

### 3.    Mr. Faragalla has Shown that his Removal is not Reasonably Foreseeable

Mr. Faragalla argues that there is no significant likelihood of his removal in the reasonably foreseeable future. (ECF No. 1 ¶ 14.)  The Court agrees.

First, Mr. Faragalla has been granted withholding of removal to Egypt, (ECF No. 1 ¶ 9; ECF No. 4-1 ¶ 9), the only country to which Mr. Faragalla has a claim to citizenship, (ECF No. 1 ¶ 6).  Without lifting the withholding of removal, Mr. Faragalla cannot be removed to Egypt. *See Zavvar v. Scott*, No. 25-2014, 2025 WL 2592543, at *7 (D. Md. Sept. 8, 2025).

As this Court explained in *Banoub*, "'[a] grant of withholding of removal substantially increases the difficulty of removing an individual.'"  2025 WL 3723458, at *9 (quoting *Zavvar*, 2025 WL 2592543, at *7); *see also Munoz-Saucedo v. Pittman*, 789 F. Supp. 3d 387, 399 (D.N.J. 2025) (finding the same).  Indeed, even unlike the petitioners in *Zadvydas* who were subject to final orders of removal but did *not* have pending legal bars to removal, *see Zadvydas*, 533 U.S. at 684, Mr. Faragalla cannot be removed to his home country because he has been granted withholding of removal.  That Petitioner cannot be removed to Egypt presents strong evidence that his removal is unlikely to occur in the reasonably foreseeable future. *Cf. Piao v. Lyons*, No. 1:25-cv-1725 (AJT), 2025 WL 3046783, at *3 (E.D. Va. Oct. 31, 2025) (finding that removal was reasonably foreseeable where "[r]espondents . . . represented that [p]etitioner's travel documents to China," his home country, "were approved" and that issuance of the documents would "permit [p]etitioner to board a commercial flight to China"); *Clarke v. Kuplinski*, 184 F. Supp. 3d 255, 259–61 (E.D. Va. 2016) (finding that removal was reasonably foreseeable where the United States worked closely and diligently with Jamaican officials to effectuate petitioner's removal to his home country).

Mr. Faragalla also correctly contends that "the government has identified no viable-third

country removal option." (ECF No. 1 ¶ 12.) Sometime prior to July 2025, DHS sent two I-241 requests to Chad and Libya requesting Mr. Faragalla's removal to one of those countries. (ECF No. 4, at 2 n.1.) According to Respondent, "Libya denied the request. Chad has not responded." (ECF No. 4, at 2 n.1.) Libya's denial, and Chad's outstanding response, weigh in favor of finding that Petitioner's removal is not reasonably foreseeable. *See Zavvar*, 2025 WL 2592543, at *7 (finding that third countries' lack of response to I-241 requests for "more than two months" weighed in favor of finding that removal was not reasonably foreseeable).

Even if Respondent's I-241 requests were sufficient, DHS concedes that it "is no longer relying on [the I-241] process" to effectuate third country removals. (ECF No. 4, at 2 n.1.) Instead, DHS is "relying on Department of State negotiations to effectuate third country removals." (ECF No. 4, at 2 n.1.)

According to Respondent, "Petitioner has been identified by the Removal Management Division as a *potential* candidate for a third country removal agreement." (ECF No. 4-1 ¶ 12 (emphasis added).) Respondent has not, and apparently cannot, disclose to the Court the country to which Petitioner has been identified as a potential candidate for removal. (*See* ECF No. 6.) Based on the record before the Court, removal to that third country through the Department of State's negotiations is not reasonably foreseeable for at least four reasons.

First, it is unclear how long the third country removal process will take. As ICE Unit Chief Janese Mull testified before this Court in *Banoub*, Third Country Removal Agreements are the product of "sensitive diplomatic negotiations." *Banoub*, 2025 WL 3723458, at *10. As a result, the "timeline for the review process" cannot be approximated. *Id.* According to Unit Chief Mull, this timeline "'varies.'" *Id.*; *see Cruz Medina v. Noem*, 794 F. Supp. 3d 365, 379 (D. Md. 2025) ("[O]f particular relevance under *Zadvydas*, [petitioner] has pointed to the

11

noncommittal nature of the representations that the government has made regarding the possibility of removal to El Salvador: that it 'intends' to remove him to El Salvador, and that his case is 'under current review by El Salvador for the issuance of a travel document.'"). Respondent provides no more information here than in *Banoub* regarding the timeframe for Mr. Faragalla's Third Country Removal Agreement. (*See* ECF No. 6.) Without more information, the Court must find, as it did in *Banoub*, that this weighs in favor of finding that Mr. Faragalla's removal is not reasonably foreseeable. *See Banoub*, 2025 WL 3723458, at *10.

Second, there is no evidence before the Court that the unnamed third country has ever entered into a Third Country Removal Agreement with the United States nor that the country has, or will, accept Egyptian citizens. (ECF No. 6, at 1 (capturing Respondent's refusal to provide information on this point when ordered to do so by the Court because he was "not authorized to disclose" this information).) As in *Banoub*, the Court finds that this dearth of evidence further indicates that removal is not reasonably foreseeable. *See Banoub*, 2025 WL 3723458, at *10 (finding removal not reasonably foreseeable where respondent could not show that the potential third country had a history of accepting Egyptian citizens).

Third, Unit Chief Mull testified in *Banoub* that not a single Egyptian citizen had been successfully removed to any third country pursuant to a Third Country Removal Agreement during the first eleven months of 2025. *Banoub*, 2025 WL 3723458, at *10. When recently ordered to provide additional information about the number of Egyptian citizens removed since the beginning of 2025 to any third country, or to the unnamed third country in question, Respondent indicated that he was unauthorized to disclose the information. (ECF No. 6, at 1.) Once again, absent new information from Respondent, the fact that *no* Egyptian citizens were removed pursuant to a Third Country Removal Agreement during the first eleven months of

12

2025 "dramatically decreases the foreseeability of [Mr. Faragalla's] removal to a third country." *Banoub*, 2025 WL 3723458, at \*10.

Fourth and finally, depending on the third country to which DHS seeks to remove Mr. Faragalla, he may be statutorily protected from removal under the INA or CAT. *See, e.g.*, 8 U.S.C. § 1231(b)(3) (providing that "the Attorney General may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group or political opinion"); *see also* 8 C.F.R. § 208.16(a) (governing withholding of removal under the INA and CAT).

Respondent argues that all the process Mr. Faragalla would be owed in such a circumstance is set out in the March Guidance and summarized in the eight-step process discussed *supra*. (*See* ECF No. 4-1 ¶ 12 ("Should [Mr. Faragalla] be accepted for third-country removal, DHS will follow the Secretary's March 30th *Guidance Regarding Third Country Removals*.").) But district courts within the United States Court of Appeals for the Fourth Circuit and across the country have found that the process in the March Guidance is unlawful. *See D.V.D. v. Dep't of Homeland Sec.*, —F. Supp. 3d—, 2026 WL 521557, at \*23, \*42 (D. Mass. 2025) (issuing declaratory relief and vacating the March Guidance as not in accordance with law under the Administrative Procedure Act and unconstitutional under the Due Process Clause) (judgment stayed for fifteen days); *Cruz Medina v. Noem*, 806 F. Supp. 3d 536, 548–52 (D. Md. 2025) (granting preliminary injunction for petitioner by finding a due process violation under the three-factor *Mathews* framework); *Escobar v. Chestnut*, No. 1:25-cv-01801, 2025 WL 3687639, at \*2–4 (E.D. Cal. Dec. 19, 2025) ("Courts across this circuit have found that ICE's policy, as described in the March and July Memoranda, is likely unconstitutional.").

At this juncture, because Respondent has not identified a third country for removal, the Court need not and does not decide the amount and type of process to which Mr. Faragalla would be constitutionally entitled if Respondent intended to remove Mr. Faragalla to a country where he feared he would be persecuted or tortured. Nevertheless, that Mr. Faragalla would be entitled to *some* process to adjudicate this claim depending on the third country likewise weighs against a finding that removal is reasonably foreseeable. *See Zavvar*, 2025 WL 2592543, at *8.

The circumstances of Mr. Faragalla's arrest and detention are nearly identical to those previously addressed by this Court in *Banoub*. As in that case, the Court finds that Mr. Faragalla has shown that his removal is not likely to occur in the reasonably foreseeable future. *Banoub*, 2025 WL 3723458, *9–12. The Court next considers whether Respondent has rebutted Petitioner's showing. He has not.

### 4.    Respondent Has Not Rebutted Mr. Faragalla's Showing that He is Not Likely to be Removed in the Reasonably Foreseeable Future

Respondent has not produced evidence sufficient to rebut Mr. Faragalla's showing that he is unlikely to be removed in the reasonably foreseeable future. *Castaneda*, 95 F.4th at 756. Respondent's *only* argument on this point is that the removal efforts he identified in *Banoub*—a case involving factual and legal issues nearly identical to those here and where this Court already held that Respondent had *not* carried his burden in rebutting the petitioner's showing—"are sufficient." (ECF No. 4, at 1–2.) Respondent cannot carry his burden in *rebutting* Mr. Faragalla's showing by solely relying on argument this Court has already rejected. *See Banoub*, 2025 WL 3723458, at *12.

Thus, for the same reasons this Court outlined in *Banoub*, Respondent has not rebutted Mr. Faragalla's showing. *Id.* Respondent cannot identify a single country that has agreed to accept Mr. Faragalla. Respondent's I-241 requests to Libya and Sudan have either been rejected

or abandoned by ICE. The "identification" of Mr. Faragalla as a potential for a Third Country

Removal Agreement to an unknown third country, who may or may not accept Mr. Faragalla on

an unknown timeframe, does not remotely demonstrate that Mr. Faragalla's removal is likely to

occur in the foreseeable future or rebut Mr. Faragalla's showing to that effect. *Cf. Cruz Medina*,

794 F. Supp. 3d at 380–81 (finding that the United States rebutted petitioner's showing that

removal was not reasonably foreseeable where the United States produced evidence that his

"case [was] under current review by El Salvador for the issuance of a travel document").

Respondent has failed to carry his burden to rebut Mr. Faragalla's showing that his

removal is not likely to occur in the reasonably foreseeable future.[4]

### IV. Conclusion

Recognizing the prerogative of the Executive Branch on matters involving immigration

and the deference this Court owes in considering such issues, *see Zadvydas*, 533 U.S. at 700–01,

Mr. Faragalla has nevertheless shown that his removal is not likely to occur in the reasonably

foreseeable future, and Respondent has not rebutted that presumption.

For the reasons articulated above, the Court will grant Mr. Faragalla's Petition, (ECF No.

1), and order him released.

An appropriate Order shall issue.

Date: 2/26/26                                    _____/s/_____
Richmond, Virginia                               M. Hannah Lauck
                                                 Chief United States District Judge

---

[4] Because the Court grants relief under *Zadvydas*, the Court need not consider whether
Mr. Faragalla is entitled to additional process under the Fifth Amendment. *See Castaneda*, 95
F.4th at 761 (explaining that the *Zadvydas* standard is due process and acknowledging that as-
applied constitutional challenges remain to address "exceptional" cases).